UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PNC BANK, NATIONAL ASSOCIATION,

        Plaintiff and Counter-defendant,

v.                                       Case Number 14-10527
                                            Honorable David M. Lawson

GOYETTE MECHANICAL COMPANY, INC.,
GOYETTE-WEST, INC., DOMINIC GOYETTE,
and DOMINIC T. GOYETTE TRUST DATED
AUGUST 26, 1998, AS AMENDED,

        Defendants, Cross-plaintiffs,
        and Cross-defendants,

and

EL MECHANICAL, INC.,

        Defendant, counter-plaintiff,
        Cross-plaintiff, and Cross-defendant,

and

GOYETTE MECHANICAL COMPANY, INC.,
GOYETTE-WEST, INC., DOMINIC GOYETTE,
and DOMINIC T. GOYETTE TRUST DATED
AUGUST 26, 1998, AS AMENDED,

        Third-party plaintiffs,

v.

GERALD PEGUESE, PS DESIGN SYSTEMS, LLC,
ISAIAH STOVALL, and CARLA JACKSON-STOVALL,

        Third-party defendants.
_____/

**OPINION AND ORDER GRANTING MOTION BY PS DESIGN SYSTEMS, LLC, CARLA JACKSON-STOVALL AND ISAIAH STOVALL TO DISMISS THIRD-PARTY COMPLAINT, AND PERMITTING THIRD-PARTY PLAINTIFFS TO FILE AN AMENDED THIRD-PARTY COMPLAINT**

PNC Bank commenced this action for the appointment of a receiver when joint borrowers E.L. Mechanical, Inc., Goyette Mechanical, Inc., and Goyette-West, Inc. fell out of formula on a substantial loan that funded a joint business venture involving the mechanical contracting (plumbing, electrical, heating, ventilation, air conditioning) trades. The Goyette interests joined with E.L. Mechanical, a minority-owned company, to seek mechanical contracting opportunities that might be available to minority-owned businesses. The relationship soured between the Goyette interests and E.L. Mechanical and its owner, Gerald Peguese, and the joint venture was unraveling when the bank stepped in. The dispute then trickled down to the parties in the form of a cross-claim and third-party action, in which Goyette Mechanical and Goyette-West, and loan guarantors Dominic Goyette, and Dominic T. Goyette Trust Dated August 26, 1998 have accused Peguese of diverting assets to another contractor, PS Design Systems, LLC and its "principals," Carla Jackson-Stovall and Isaiah Stovall. The Goyette parties allege that the PS Design third-party defendants conspired to defraud them of funds paid on invoices for engineering services PS Design allegedly rendered to E.L. Mechanical, and that they were unjustly enriched. Presently before the Court is a motion to dismiss the third-party complaint (or for summary judgment) by PS Design, Jackson-Stovall, and Stovall. They argue that the third-party complaint fails to state a claim of civil conspiracy, the fraud allegations lack the requisite specificity, and the third-party plaintiffs lack standing because they conveyed their rights to profits from the joint venture to another entity, GP Trust. The Court heard oral argument on June 17, 2014, and now concludes that the third-party complaint fails to state claims against Jackson-Stovall, the third-party plaintiffs abandoned their claim for unjust enrichment, and they lack standing to bring their claims against PS Design, Jackson-Stovall, and Stovall. Therefore, the motion to dismiss will be granted.

I.

Goyette Mechanical Company, Inc. is a Michigan corporation that performs mechanical contracting work, including plumbing, heating, HVAC, and electrical installations. Dominic Goyette and two other shareholders – Cherie Parks and Paul Goyette – own and operate Goyette Mechanical. E.L. Mechanical (ELM) is a Michigan corporation, 55 percent of which was owned initially by Peguese. According to the pleadings filed by the several parties in this case, in 2009, Goyette Mechanical partnered with ELM to expand Goyette Mechanical's minority contracting work in Detroit. Under the partnership, Goyette Mechanical provided capital, equipment, tools, vehicles, employees, and administrative and accounting support to ELM. Additionally, Goyette Mechanical collected all of ELM's receivables, managed cash, and paid ELM's obligations, including payroll, subcontractors, suppliers, and loan obligations.

To fund the partnership, plaintiff PNC Bank extended a $6 million line of credit and a $451,107 term loan to defendants ELM, Goyette Mechanical Company, Inc., and Goyette-West, Inc. as joint borrowers. The loan was guaranteed by Dominic Goyette, and Dominic T. Goyette Trust Dated August 26, 1998. PNC Bank made advances on the line of credit between 2012 and 2013. Goyette Mechanical and ELM jointly used the funds to support ELM's operations. Goyette Mechanical paid PNC all of ELM's payment obligations under the line of credit after it collected and processed ELM's accounts receivables and account payables. By January 28, 2014, the indebtedness to PNC Bank totaled $5,636,434.02.

Between 2009 and April 29, 2013, Peguese owned 55 percent of ELM's stock and another Goyette entity, GP Trust, owned 45 percent. The beneficiaries of the GP Trust are Dominic Goyette, Cherie Parks, and Paul Goyette. On April 29, 2013, GP Trust, Peguese, and ELM executed a profit

split agreement to help ELM qualify for certain minority business certifications. Under the agreement, GP Trust conveyed all of its stock to Peguese, granting him 100 percent ownership of ELM. As consideration for conveying the stock, Peguese agreed to split profits 50-50 with GP Trust.

The Goyette parties accuse ELM of diverting the partnership's profits and ELM's receivables. For instance, the Goyette parties allege that ELM diverted approximately $1.175 million in funds, including $107,000 in receivables to a Charter One account rather than the established PNC account for payment on the line of credit.

According to the Goyette parties, on January 21, 2014, Peguese terminated ELM's contractual relationship with Goyette Mechanical and stopped sharing ELM's profits in violation of the profit split agreement. The Goyette parties also allege that Peguese fraudulently misrepresented the existence of a contract with third-party defendant PS Design. They allege that PS Design produces website designs and is not licensed to provide engineering services. According to the Goyette parties, neither Isaiah Stovall nor Carla Jackson-Stovall have any formal training or education in the field of engineering. They allege that one invoice that PS Design submitted to Goyette Mechanical included an address at a UPS store in Lexington, Kentucky.

The Goyette parties accuse Peguese of using PS Design to "fraudulently funnel partnership funds," presumably away from ELM. They allege that ELM paid PS Design $140,000 for engineering services without appropriate documentation or contracts. In December 2013, Peguese also requested that Goyette Mechanical pay $150,000 on an invoice on a $300,000 contract with PS Design in connection with the Chrysler JNAP project. Goyette Mechanical says that it refused to pay PS Design the $150,000 because it did not have any records or information about a pending

project involving PS Design or any contract with PS Design. At no time, according to the Goyette parties, did PS Design ever provide any services or employees for the Chrysler JNAP project or any other project involving Goyette Mechanical and ELM.

After PNC Bank commenced the present action, Goyette Mechanical, Goyette-West, and Dominic Goyette and his trust filed a cross-claim against ELM and a third-party complaint against Gerald Peguese, PS Design, Stovall, and Jackson-Stovall alleging breach of contract, fraudulent misrepresentation, civil conspiracy, claim and delivery, conversion, violation of Michigan's anti-bribery statute, and unjust enrichment. The breach of contract, fraudulent misrepresentation, claim and delivery, conversion, and violation of Michigan's anti-bribery statute counts are directed at Gerald Peguese only. The motion to dismiss or for summary judgment presently before the Court was brought by PS Design, Stovall, and Jackson-Stovall only; ELM and Peguese have not joined in the motion.

II.

The purpose of Rule 12(b)(6) is to assess whether the complaint — or third-party complaint in this case — is legally sufficient to allow the case to proceed further, even if all the allegations in the complaint are taken as true. *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). Under Rule 12(b)(6), the third-party complaint is viewed in the light most favorable to the third-party plaintiffs, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the third-party plaintiffs. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). "[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations." *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228-29 (6th Cir. 1997) (quoting *Columbia Nat'l Res.,*

*Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Tatum*, 58 F.3d at 1109; *Tackett v. M & G Polymers, USA, L.L.C.*, 561 F.3d 478, 488 (6th Cir. 2009). "To survive a motion to dismiss, [a third-party plaintiff] must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007). Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief. *Ashcroft v. Iqbal*, [556 U.S. 662, 678] (2009)." *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Under the new regime ushered in by *Twombly* and *Iqbal*, pleaded facts must be accepted by the reviewing court but conclusions may not be accepted unless they are plausibly supported by the pleaded facts. "[B]are assertions," such as those that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim, can provide context to the factual allegations, but are insufficient to state a claim for relief and must be disregarded. *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 555). However, as long as a court can "'draw the reasonable inference that the defendant is liable for the misconduct alleged,' a plaintiff's claims must survive a motion to dismiss." *Fabian*, 628 F.3d at 281 (quoting *Iqbal*, 556 U.S. at 678).

The third-party defendants styled their motion in the alternative as one for summary judgment. They supported their motion with affidavits from Carla Jackson-Stovall and Isaiah Stovall, which deny in a conclusory fashion that the third-party defendants had any contractual responsibilities to Goyette Mechanical, made any representations to the third-party plaintiffs, or

received any funds from them. These affidavits provide the Court with no additional information to evaluate the sufficiency of the factual allegations of the third-party complaint, and there is no need to apply Rule 56.

### A. Standing

The PS Design parties argue that the third-party plaintiffs have no standing to bring their conspiracy and unjust enrichment claims because they have not been damaged directly, and the real party in interest is GP Trust. The third-party plaintiffs counter that they suffered damages because they were injured by the third-party defendants' tortious acts when funds that should have been used to pay down the line of credit were diverted.

Standing is "the threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). It is required in order to confer subject matter jurisdiction upon federal courts under Article III of the Constitution. The Supreme Court has stated that the standing requirement "limits federal court jurisdiction to actual controversies so that the judicial process is not transformed into 'a vehicle for the vindication of the value interests of concerned bystanders.'" *Coal Operators & Assocs., Inc. v. Babbitt,* 291 F.3d 912, 915-16 (6th Cir. 2002) (quoting *Valley Forge Christian College v. Ams. United for Separation of Church & State, Inc.,* 454 U.S. 464, 473 (1982)).

The three constitutional requirements for standing are "(1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) that the injury will likely be redressed by a favorable decision." *Barnes v. City of Cincinnati,* 401 F.3d 729, 739 (6th Cir. 2005) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)). In addition, a plaintiff must also satisfy three prudential standing requirements. *City of Cleveland v. Ohio,* 508 F.3d 827, 835 (6th Cir. 2007). First, a plaintiff must "assert his own legal rights and interests, and cannot rest his

claim to relief on the legal rights or interests of third parties." *Warth,* 422 U.S. at 499 (internal citations omitted). Second, "a plaintiff's claim must be more than a 'generalized grievance' that is pervasively shared by a large class of citizens." *Coal Operators,* 291 F.3d at 916 (quoting *Valley Forge,* 454 U.S. at 474-75). Third, in statutory cases, the plaintiff's claim must fall within the "zone of interests" regulated by the statute in question. *Ibid.* "These additional restrictions enforce the principle that, 'as a prudential matter, the plaintiff must be a proper proponent, and the action a proper vehicle, to vindicate the rights asserted.'" *Ibid.* (quoting *Pestrak v. Ohio Elections Comm'n,* 926 F.2d 573, 576 (6th Cir. 1991)).

The third-party plaintiffs believe that they have shown an injury in fact because Dominic Goyette and his trust guaranteed the PNC Bank loan and Goyette Mechanical and Goyette-West are principal borrowers on the loan. The third-party plaintiffs note that they are personally liable if ELM does not pay its debt obligations: Goyette Mechanical and Goyette-West are liable as joint borrowers and Dominic Goyette and his trust are liable as guarantors. However, the third-party plaintiffs have not pointed to any agreement that obligates ELM to pay any particular share of the indebtedness, and none of the third-party plaintiffs are entitled to any revenue or profits from ELM. The only entity that fits that bill is GP Trust, which is not a party to the case. Goyette Mechanical attempts to equate itself with GP Trust in paragraph 55 of the third-party complaint alleging breach of contract against Peguese ("Paguese has breached the [profit splitting] Agreement by refusing to give Goyette Mechanical (i.e. GP Trust) its rightful share of profits earned and received before and after the business relationship ended."), but there are no pleaded facts that merges the identity of the two entities or makes one the *alter ego* of the other.

The Sixth Circuit has held that "in order to obtain standing to assert a claim, a guarantor's injury must not stem from the harm done to the corporation. Instead, any redressable injury must flow from individualized harm done to the plaintiff, separate from any claims that the corporation may assert." *Quarles v. City of E. Cleveland*, 202 F.3d 269 at *4 (6th Cir. 1999). Michigan law is in accord. *Levin v. Thorn Apple Valley, Inc.*, No. 200106, 1998 WL 1988715, at *3 (Mich. App. Dec. 1, 1998) (holding that a guarantor has standing if it can establish that "(1) the wrongdoer owed a special duty personal to him in his capacity as a creditor or guarantor, or (2) that the injury suffered is personal to him as a creditor or guarantor and distinct from the injury suffered by the corporation itself."). The exception does not apply "merely because the acts complained of resulted in damage both to the corporation and the individual, but is limited to cases where the wrong done amounts to a breach of duty owed to the individual personally." *Michigan National Bank v. Mudgett*, 178 Mich. App. 677, 679-80, 444 N.W.2d 534 (1989). "Thus, where the alleged injury to the individual results only from the injury to the corporation, the injury is merely derivative and the individual does not have a right of action against the third party." *Ibid.*

So it is here for third-party plaintiffs Dominic Goyette and his trust. If revenue were "funneled" away from ELM, it might not be available to pay down the indebtedness to PNC Bank, assuming ELM had a discrete obligation to do so, and that ultimately may expose the guarantors to liability. But that liability is derivative, and will not constitute an injury in fact. An example of that rule is found in *Mid-State Fertilizer v. Exch. Nat'l Bank*, 877 F.2d 1333 (7th Cir. 1989), where the Seventh Circuit held that guarantors lacked standing to sue the defendant because their injuries derived completely from the injuries that a corporation suffered. The plaintiffs — shareholders and managers of a corporation — guaranteed a loan that a bank made to a corporation. The corporation

went bankrupt, and the plaintiffs had to pay the bank the remaining portion of the loan. The plaintiffs sued the bank under federal statutory law, alleging that it had committed fraud and breach of contract, thereby depleting the funds of the corporation and forcing the plaintiffs to pay the amount due under the loan. The Seventh Circuit held that the corporation was the proper party to pursue recovery from the bank because permitting the plaintiffs to pursue recovery would create an impermissible risk of double-counting. To avoid double-counting, the court held that courts must either "restrict recoveries to the directly-injured party or attempt to apportion the recovery according to who bears the effects." *Id.* at 1336. The court expressed concern that "[s]uits by shareholders, guarantors, and the like may well be efforts to divert the debtor's assets — to pay off one set of creditors . . . while keeping the proceeds out of the hands of the firms's other creditors." *Ibid.*

The injuries that third-party plaintiffs Dominic Goyette and his trust suffered are derivative of the injuries Goyette Mechanical and Goyette-West experienced when they could not meet their loan obligations to PNC Bank. But for the borrowers' inability to pay their loan obligations, the guarantors would have no obligations under the terms of the loan documents. Dominic Goyette and his trust have not identified a duty that the third-party defendants owed them separately. The third-party complaint does not identify an injury in fact suffered by Dominic T. Goyette or his trust, and therefore they lack standing to pursue claims of civil conspiracy and unjust enrichment against PS Design Systems, Isaiah Stovall, and Carla Jackson-Stovall. *See Mid-State Fertilizer Co.*, 877 F.2d at 1335 ("When the injury is derivative, recovery by the indirectly injured person is a form of double counting.").

Goyette Mechanical and Goyette-West have not identified any agreement allocating responsibility to ELM to pay a discrete share of the PNC Bank loan. ELM's only obligation, as far

as the pleadings disclose, was to deposit its receivables in the PNC Bank account and permit Goyette Mechanical to pay ELM's payables. ELM's other obligation was to split its profits 50-50, but, as noted above, the recipient was to be GP Trust. Although Goyette Mechanical provided accounting services for ELM, neither it nor Goyette-West are entitled to any profits that E.L. Mechanical earned under the profit sharing agreement. In fact, the injury alleged in the third-party complaint is "the misappropriation and/or theft of $440,000 of partnership profits." Third-party Compl. ¶ 64. Goyette Mechanical and Goyette-West therefore do not have standing to seek damages for the loss of partnership profits, because they did not suffer an injury in fact.

(The parties have questioned whether the claims against the third-party defendants should have been brought by the Receiver. The Receiver "stand[s] in the shoes of the entity in receivership," *Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787, 793 (6th Cir. 2009), which is Goyette Mechanical. It is well established that "receivers . . . lack standing to bring suit unless the receivership entity could have brought the same action." *Ibid.*).

Dominic Goyette, Cherie Parks, and Paul Goyette are the shareholders of Goyette Mechanical and the beneficiaries of GP Trust. They do not have standing in their individual capacities, however, because the injury, if any, was suffered by the entity. The "doctrine of standing provides that a suit to enforce corporate rights or to redress or prevent injury to a corporation, whether arising from contract or tort, ordinarily must be brought in the name of the corporation, and not that of a stockholder, officer, or employee." *Belle Isle Grill Corp. v. Detroit*, 256 Mich. App. 463, 474, 666 N.W.2d 271 (2003). The same rule applies to unincorporated associations, *see Brocki v. Am. Exp. Co.*, 279 F.2d 785, 789 n.2 (6th Cir. 1960) ("[C]apacity has been accorded the unincorporated association to sue or be sued in its common name.") (citations omitted); Fed. R. Civ.

P. 17(b)(3)(A), and trusts, *Apollinari v. Johnson*, 104 Mich. App. 673, 675-76, 305 N.W.2d 565, 567 (1981) (holding that "the beneficiary of a trust may not maintain an action at law against third persons where the trustee is entitled to do so" (citing 2 Restatement Trusts 2d, s 281(1), p 42, and *Forrest v. O'Donnell*, 42 Mich. 556, 558, 4 N.W. 259 (1880))). The claim for diverting funds away from the profit splitting agreement is GP Trust's to make.

The third-party plaintiffs have not pleaded an injury in fact in connection with their conspiracy and unjust enrichment claims. Therefore they have no standing to bring those claims against PS Design Systems, Isaiah Stovall, and Carla Jackson-Stovall. The third-party complaint will be dismissed as to them.

### B.  Civil conspiracy

Even if the third-party plaintiffs established standing, the civil conspiracy count suffers from other defects. A civil conspiracy is "a combination of two or more persons, [who] by some concerted action, [agree] to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by unlawful means." *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 194 Mich. App. 300, 313, 486 N.W.2d 351 (1992); *see also Ahlers v. Schebil*, 188 F.3d 365, 374 (6th Cir. 1999); *Fenestra Inc. v. Gulf American Land Corp.*, 377 Mich. 565, 593, 141 N.W.2d 36, 48 (1966). However, although civil conspiracy is a free-standing claim, it "may not exist in the air; rather, it is necessary to prove a separate, actionable tort." *Early Detection Ctr., PC v. New York Life Ins. Co.*, 157 Mich. App. 618, 632, 403 N.W.2d 830, 836 (1986); *see also Dauenhauer v. Bank of New York Mellon*, 562 F. App'x 473, 483 (6th Cir. 2014); *Collins v. Wickersham*, 862 F. Supp. 2d 649, 660 (E.D. Mich. 2012).

The underlying tort, it appears, is fraud. To survive the motion to dismiss, therefore, the pleading must contain facts that plausibly allege that PS Design, Stovall, and Jackson-Stovall each agreed to defraud the third-party plaintiffs. That is, the pleaded facts must show "that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Memphis, Tennessee Area Local, Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004) (quoting *Hooks v. Hooks*, 741 F.2d 935, 943-44 (6th Cir. 1985)).

To state a claim of fraud under Michigan law, the third-party plaintiffs must plead facts showing "'(1) [t]hat defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.'" *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813, 815-16 (1976) (quoting *Candler v. Heigho*, 208 Mich. 115, 121, 175 N.W. 141, 143 (1919)).

The third-party complaint alleges that Peguese used PS Design to funnel partnership profits by submitting invoices for engineering services that PS Design did not perform. They allege that PS Design is not licensed to provide engineering services, and although PS Design produces website designs, neither Isaiah Stovall nor Carla Jackson-Stovall have any formal training in engineering. The third-party plaintiffs also allege that PS Design paid ELM for engineering services that were never performed.

Those allegations do not state a claim of civil conspiracy against Carla Jackson-Stovall. The third-party complaint does not allege that she agreed to participate in any fraudulent scheme, nor does it contain facts from which such a plausible inference can be made.

On the elements of fraud, the third-party plaintiffs allege that PS Design falsely represented to Goyette Mechanical in three invoices that it performed engineering services for the Chrysler JNAP Project. Those allegations satisfy the elements of representation, falsity, knowledge, intent, and injury. The pleading, however, does not allege reliance. The third-party plaintiffs have not alleged, for example, that Goyette Mechanical relied on the invoices to process PS Design's invoices, or that the invoices prevented Goyette Mechanical from discovering the fraudulent scheme.

Instead, as to the first invoice, the third-party complaint alleges that *ELM* paid PS Design $140,000 without appropriate documentation. It does not allege that Goyette Mechanical relied on the invoice to process PS Design's check. As to the second invoice, the third-party complaint does not allege that the invoice prevented Goyette Mechanical from discovering the fraudulent scheme. The opposite is asserted: the pleading stated that "Goyette Mechanical refused to pay the $150,000.00 PS Design invoice because it had no record or information for any pending projects involving PS Design or any contract with PS Design." Nor do the third-party plaintiffs allege how Goyette Mechanical relied to their detriment on the third invoice. PS Design submitted that invoice to ELM in February 2014, several weeks after ELM terminated its relationship with Goyette Mechanical. And Goyette Mechanical immediately questioned the payment in filings before this Court. *See, e.g.*, Mot. Contempt, dkt. #33, at 3.

Because allegations on the element of reliance are lacking, there is no well-pleaded claim of fraud to support the civil conspiracy count in the third-party complaint.

C.  Unjust enrichment

The third-party defendants argue that the third-party plaintiffs have failed to state a claim for unjust enrichment. To state a claim for unjust enrichment under Michigan law, a plaintiff must plead that the defendants received a benefit from the plaintiff and that an inequity resulted to the plaintiff as a consequence of the defendants' retention of that benefit. *Liggett Rest. Grp., Inc. v. City of Pontiac*, 260 Mich. App. 127, 137, 676 N.W.2d 633, 639 (2003). Unjust enrichment arises out of a contract implied in law. *F.D.I.C. v. Jeff Miller Stables*, 573 F.3d 289, 295 (6th Cir. 2009). "Contracts implied in law are not true contracts, but instead are quasi-contracts implied by courts when a party retains money or benefits which in justice and equity belong to another." *Ibid.* (internal citations and quotations omitted).

There are a number of problems with the third-party plaintiffs' factual pleadings. The claim is brought by all of the defendants even though Goyette Mechanical is the only party that claims injury. Further, the only identified injury is the loss of partnership profits; however, as noted above, non-party GP Trust is the injured entity, not Goyette Mechanical.

The third-party defendants also argue that the third-party complaint does not allege that the third-party plaintiffs provided any benefit to PS Design or Stovall. It is true that the third-party complaint alleges that "EL Mechanical paid PS Design," but it does not allege that Goyette Mechanical made the payments. Once again, the third-party complaint alleges that the invoices were paid out of partnership profits and the engineering services were never performed; therefore, GP Trust is the injured entity.

The third-party plaintiffs' response to these arguments consists of only a single reference to their unjust enrichment claim: "To the extent the civil conspiracy and unjust enrichment claims are

based on well pled facts in the Complaint, dismissal is not warranted." That statement fails to address the substance of the third-party defendants' contentions. A plaintiff abandons undefended claims. *Doe v. Bredesen*, 507 F.3d 998, 1007-08 (6th Cir. 2007) (affirming the district court's conclusion that the plaintiff abandoned certain claims by failing to raise them in his brief opposing the government's motion to dismiss); *Meredith v. Allen Cty. War Memorial Hosp. Comm'n*, 397 F.2d 33, 34 n.2 (6th Cir. 1968) ("Plaintiff also alleged in his complaint that jurisdiction existed under the antitrust laws, but this allegation was not advanced either in opposition [to] defendants' motion to dismiss or on appeal, and we therefore assume that the claim of antitrust violation has been abandoned."); *Mekani v. Homecomings Fin., LLC,* 752 F. Supp. 2d 785, 797 (E.D. Mich. 2010) (stating that where a plaintiff fails to respond to an argument in a motion to dismiss, "the Court assumes he concedes this point and abandons the claim"). The third-party plaintiffs' statement mentioning the unjust enrichment claim is neither an argument nor a defense. The third-party plaintiffs' have abandoned the claim.

### D. Amendment

The third-party plaintiffs have asked the Court for leave to cure any deficiency in their third-party complaint. Federal Rule of Civil Procedure 15(a)(2) states that leave to amend shall be freely given "when justice so requires." It is unclear how the third-party plaintiffs might amend their pleading to cure the standing problem. It appears, after all, that the unabandoned cause of action against the moving third-party defendants belongs to GP Trust, which is not a party to any aspect of this case. Nonetheless, the third-party plaintiffs ought to have their chance to cure the deficiencies, *see Williams v. City of Cleveland*, 771 F.3d 945, 949 (6th Cir. 2014), and they will be given an opportunity to do so.

III.

The third-party plaintiffs have not established standing to sue third-party defendants PS Design Systems, LLC, Carla Jackson-Stovall, and Isaiah Stovall. Moreover, the third-party complaint fails to state a viable civil conspiracy claim against them. The third-party plaintiffs have abandoned their unjust enrichment claim.

Accordingly, it is **ORDERED** that the motion to dismiss by third-part defendants PS Design Systems, LLC, Carla Jackson-Stovall, and Isaiah Stovall [dkt. #62] is **GRANTED**.

It is further **ORDERED** that the third-party complaint is **DISMISSED WITHOUT PREJUDICE** as to PS Design Systems, LLC, Carla Jackson-Stovall, and Isaiah Stovall.

It is further **ORDERED** that the third-party plaintiffs may file an amended third-party complaint **on or before February 11, 2015**.

It is further **ORDERED** that if the third-party plaintiffs do not file an amended third-party complaint within the time allowed, the dismissal shall be with prejudice.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: January 29, 2015

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 29, 2015.

s/Susan Pinkowski
SUSAN PINKOWSKI

---